Matter of Justine N. v Michelle P.
2026 NY Slip Op 03497
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Justine N., Appellant,
v
Michelle P. et al., Respondents. (Proceeding No. 1.)
In the Matter of Michelle P., Respondent,
v
Mark O., Respondent, and Justine N., Appellant. (Proceeding No. 2.)

Decided and Entered:June 4, 2026
CV-25-0895
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Lisa K. Miller, McGraw, for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Michael S. Sinicki of counsel), for Michelle P., respondent.
Michelle I. Rosien, Philmont, for Mark O., respondent.
Michelle E. Stone, Vestal, attorney for the children.

[*1]
Ceresia, J.
Appeal from an order of the Family Court of Broome County (Hollie Levine, J.), entered April 23, 2025, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Justine N. (hereinafter the mother) and Mark O. (hereinafter the father) are the parents of the subject children (born in 2008,FN1 2009 and 2010).FN2 Michelle P. (hereinafter the grandmother) is the children's maternal grandmother. In January 2016, an order was entered providing joint legal custody of the children to the mother, the father and the grandmother, with primary physical custody to the grandmother and parenting time for the mother and the father as the parties could agree. Years later, in April 2024, the mother filed a modification petition seeking a set schedule of visitation, alleging that the grandmother had not been allowing her to visit with or speak to the children. The grandmother, in turn, filed her own modification petition seeking sole legal custody, with physical custody to remain with her and visitation to continue on an as-agreed basis, as well as jurisdiction to be transferred to Virginia for any future proceedings. Family Court held a fact-finding hearing in January 2025 and later conducted a Lincoln hearing with each child. In April 2025, Family Court denied the mother's petition and granted the grandmother's petition. The mother appeals.FN3
With respect to the mother's modification petition, she was required as an initial matter to show that a change in circumstances had occurred since the entry of the existing custody order, thereby allowing for a reexamination of what visitation arrangement would be in the best interests of the children (see Matter of Jennifer HH. v Alavanh II., 243 AD3d 1170, 1171 [3d Dept 2025]). Regarding the grandmother's petition, as a nonparent, she was obligated to make a preliminary showing of extraordinary circumstances (see Matter of Leslie LL. v Robert NN., 208 AD3d 1479, 1481 [3d Dept 2022]; Matter of Tasha AA. v Tammy DD., 178 AD3d 1306, 1307 [3d Dept 2019]; Matter of McDevitt v Stimpson, 1 AD3d 811, 812 [3d Dept 2003], lv denied 1 NY3d 509 [2004]). Only in the event that such extraordinary circumstances are established can attention then be given to what custodial arrangement serves the children's best interests (see Matter of Leslie LL. v Robert NN., 208 AD3d at 1481). "An extraordinary circumstances inquiry involves consideration of the cumulative effect of all issues present in a given case and requires the nonparent to establish that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like circumstances" (id. [internal quotation marks and citations omitted]). Pertaining to a grandparent specifically, the requisite showing of extraordinary circumstances may be satisfied through evidence of "a prolonged separation of the parent[ ] and the child[ren] for at least [*2]24 months . . . during which the parent[ ] 'voluntarily relinquished care and control of the child[ren]' while [they] resided in the grandparent's household" (Matter of Amber B. v Scott C., 207 AD3d 847, 848 [3d Dept 2022], quoting Domestic Relations Law § 72 [2] [b]). On this appeal, the mother challenges Family Court's finding of extraordinary circumstances, and further argues that the court erred in concluding, pursuant to its best interests analysis, that the grandmother should have sole legal custody and that visitation for the mother should not be governed by a set schedule.
At the hearing, the grandmother testified credibly, in Family Court's estimation that, after the mother agreed to the 2016 custody order when the children were ages 7, 6 and 5, respectively, the children lived continuously with the grandmother in Virginia and did not see the mother apart from one occasion in 2016. That visit ended abruptly when the mother left the grandmother's house without notice after stealing money and other belongings from the grandmother and the children. While the mother would occasionally call the grandmother to ask for money or inform her of legal troubles, she would rarely inquire about the children or ask to speak to them. The only time the mother spoke to any of the children on the phone was in 2021, when she called the grandmother screaming and demanding to talk to them. When the oldest child eventually took the phone and angrily accused the mother of poor parenting, the mother responded by using callous and inappropriate language, which upset the child. These isolated but distressing contacts with the mother aside, the children were otherwise happy and healthy, excelling in academics, sports and other extracurriculars. Although they required extensive counseling due to events that had occurred while they were living with the mother, the children had made great progress in their emotional development. The children maintained contact with their three younger siblings through weekly video calls and annual vacations with them, facilitated by the grandmother. As for the mother's involvement in decisions concerning the children's upbringing, the grandmother testified that she had provided some information to the mother over the years concerning their mental health treatment and schooling, but the mother largely failed to inquire further about these matters.
For her part, the mother conceded that, since 2016, she had experienced lengthy periods of drug abuse, including heroin addiction from 2020 to 2023, and, as a result, there were years that she could not recall at all. She acknowledged that she had been arrested multiple times, and served two state prison sentences. Nevertheless, the mother contended that she had remained drug free since September 2023 and, at the time of the hearing, was employed and attending nursing school. The mother admitted that she was married to a man against whom she had previously made domestic violence allegations[*3], but asserted that those allegations were "incorrect" due to a traumatic brain injury and associated memory loss she had suffered. It was the mother's testimony that she and the grandmother were totally unable to communicate and that the grandmother had prevented her from taking part in decisions concerning the children or accessing their medical and school records. The mother claimed that she asked the grandmother if she could talk to the children on many occasions over the years and had sent letters and gifts, but the grandmother prevented her from seeing or speaking to them and had returned the letters and gifts. Family Court found the testimony by the mother pertaining to her purported efforts to contact the children not to be credible.
Deferring to Family Court's credibility assessments, we conclude that there is a sound and substantial basis in the record supporting the determination that the grandmother demonstrated the presence of extraordinary circumstances. That is, the evidence bore out a prolonged separation between the mother and children, during which she voluntarily relinquished their care and control to the grandmother, showing only sporadic interest in contacting them for nearly a decade (see Domestic Relations Law § 72 [2] [b]; Matter of Ronda A. v Jennifer A., 224 AD3d 1130, 1131-1132 [3d Dept 2024]; Matter of Amber B. v Scott C., 207 AD3d at 848).
Turning to the children's best interests, we are satisfied that the record provides a sound and substantial basis to support the modification from joint to sole legal custody in favor of the grandmother. In so concluding, we note that the relationship between the mother and the grandmother appears to have "deteriorated to the point where they are unable to maintain even a modicum of communication and cooperation for the sake of the[ ] child[ren]" (Matter of Bradley D. v Andrea D., 144 AD3d 1417, 1420 [3d Dept 2016] [internal quotation marks and citations omitted]; see Matter of Tasha AA. v Tammy DD., 178 AD3d at 1309-1310).
However, we part ways with Family Court's decision to deny the mother a set visitation schedule and instead order continued visitation as the parties may agree, taking the children's wishes into consideration. "[A] court cannot delegate its authority to determine visitation to either a [party] or a child, [but] it may order visitation as the parties may mutually agree so long as such an arrangement is not untenable under the circumstances" (Matter of Sarah I. v Ian J., 233 AD3d 1334, 1337 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 904 [2025]; see Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1416-1417 [3d Dept 2021]). The record herein reveals such an untenable situation. As we acknowledged above, the relationship between the mother and the grandmother is such that it cannot reasonably be expected that they would be able to agree on visitation. To that end, the grandmother testified that she believes there should be [*4]no contact between the mother and the children, based in part on the children's wishes and in part on the grandmother's belief that she had not been provided sufficient proof of the mother's sobriety, despite the mother's testimony that she had been drug free for over a year as of the time of the hearing. Further, notwithstanding the children's ongoing engagement in therapy, the grandmother stated that she had formulated no plan, with the children's psychiatrists or otherwise, for the children to resume contact with the mother, asserting that it was not her responsibility to do so.
Given these circumstances, and recognizing that Family Court has already inherently decided that some form of visitation is fitting, we remit the matter for "the fashioning of an appropriate, more definitive visitation schedule and the allocation of any other suitable resources to restore the[ ] relationship" between the mother and the children (Matter of Cecelia BB. v Frank CC., 200 AD3d at 1417; see Matter of Richard CC. v Lacey DD., 243 AD3d at 1189; Matter of Melissa H. v Jordan G., 238 AD3d 1296, 1301 [3d Dept 2025]; Matter of C.M. v Z.N., 230 AD3d 1409, 1412-1413 [3d Dept 2024]). Upon remittal, Family Court must decide "the amount, duration and location of such parenting time . . . and any other provisions that would develop and/or promote a healthy and meaningful relationship between the mother and the child[ren] (e.g., reasonable phone/video contact, written communication, etc.)" (Matter of C.M. v Z.N., 230 AD3d at 1413 [internal quotation marks, brackets and citation omitted]; see Matter of Richard CC. v Lacey DD., 243 AD3d at 1189). While we are mindful that the court expressed concern that the children could be traumatized by any future contact with the mother, we note the mother's expressed willingness to engage in therapeutic visitation, an option that should be considered. The mother's remaining contentions, to the extent not expressly addressed herein, have been considered and deemed unpreserved and/or without merit.
Pritzker, J.P., Fisher, McShan and Corcoran, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided that Justine N.'s visitation with the children would be as she and Michelle P. could agree; matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1
As the oldest child turned 18 during the pendency of this appeal, any issues relative to custody or visitation concerning her are moot (see Matter of Evelyn EE. v Jody CC., 222 AD3d 1294, 1295 n 1 [3d Dept 2023], lvs denied 41 NY3d 907 [2024], 41 NY3d 907 [2024], 41 NY3d 907 [2024]; Matter of Leslie LL. v Robert NN., 208 AD3d 1479, 1480 n [3d Dept 2022]).

Footnote 2
In addition to the three subject children, the mother has one older child who was previously adopted, and three younger children for whom the mother surrendered her parental rights following a neglect proceeding and who are currently in foster care.

Footnote 3
Both at the hearing and on appeal, the father and the attorney for the children have been entirely supportive of the grandmother's position.